WESTCHESTER COUNTY—HON. OWEN T. COFFIN, SURROGATE.—April, 1886.

## MATTER OF DEARING.

*In the matter of the estate of* THOMAS DEARING, *deceased.*

An executor, whose letters have been revoked in consequence of his having been adjudicated a lunatic, though afterwards judicially restored to sanity and the possession of his property, can never be rehabilitated in office.

Of the two persons, A. and B., nominated executors of a will, the former alone qualified and entered upon the discharge of his official duties. Having been judicially declared to be incompetent to manage his affairs, A. was removed from office, and letters were issued to B., who died. Thereafter A., who had been adjudged to be again sane, asked that letters testamentary be reissued to him.—

*Held*, that there was no rule of the common law, nor provision of statute, authorizing the court to grant the prayer of petitioner, and that an administrator, with the will annexed, must be appointed.

GILBERT H. DEARING and Francis Childs were named as executors in the will of decedent, which was admitted to probate in January, 1878. Gilbert H. Dearing alone qualified, and took upon himself the burthen of its execution, and entered upon the

discharge of his duties. In 1882, he was duly adjudged to be a lunatic, a committee appointed, and he was sent to the asylum for the insane in Binghamton, N. Y. On application being made to the court, setting forth the facts above stated, and after citing the proper parties, a decree was made on April 3rd, 1883, revoking the letters testamentary issued to said executor. Whereupon Francis Childs, the other executor named in the will, a resident of Boston, Mass.; applied for letters to be issued to him, which application, on his taking the oath of office, was granted, and the letters issued accordingly.

In March, 1885, the •Supreme court, by an order then made, reciting the fact that Dearing had become competent to manage himself and his affairs, discharged the committee and directed him to restore to Dearing his property. The latter now asks that letters testamentary be reissued to him as such executor.

ABRAM S. UNDERHILL, *for applicant.*

THE SURROGATE.—There seems to have been no provision of law made, under which new letters can be issued to an executor or administrator, where they have been revoked ; and no common law rule appears to exist, authorizing it to be done. The decree of revocation must be regarded as conclusive and final, unless obtained fraudulently, or on some other ground which would warrant the court in setting it aside or vacating it.

Suppose the executor whose letters have been revoked had been the only one named in the will, and an administrator with the will annexed had been duly

appointed, and afterwards the ground of revocation had ceased to exist, could the court displace the administrator and replace the executor? So, if an executor, after entering upon his duties, should remove from the State, and, on being required, should fail to give a bond, in consequence of which his letters should be revoked, would he, afterwards, on removing into the State again, be entitled to be restored to the office he had vacated? And again, suppose he were, while executor, convicted of an infamous crime and imprisoned in a State prison, in consequence of which his letters were revoked; and suppose that, pending his term of imprisonment, he should be pardoned and restored to citizenship, could the court again create him executor? These questions require an answer in the negative. Where letters have once been revoked, the appointment of the executor has ceased to exist, just as completely as if he had never been named by the testator. He cannot be rehabilitated.

In this case there is an executor duly qualified and acting. It may be inconvenient or impossible for him to discharge his duties. In that case, he could apply to have his resignation accepted, and, if successful, then an administrator with the will annexed might succeed him.